IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MICHAEL D. GRAY,
      Petitioner,

vs.                              Case No.:  3:12cv375/LAC/EMT

MICHAEL D. CREWS, et al.,
      Respondents.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 14, 16).  Petitioner filed a reply (doc. 20).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 16).[1]  Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2006-CF-2812, with one count of sexual battery (engaging in sexual battery while

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

in position of familial or custodial authority) (Count 1), two counts of child abuse without causing great bodily harm, permanent disability, or permanent disfigurement (Counts 2 and 3), and one count of lewd and lascivious molestation (offender 18 or older, victim less than 12) (Count 4) (Ex. A at 17–18). Following a jury trial, he was found guilty as charged (Ex. A at 21–22, Exs. B, C). On December 26, 2007, Petitioner was sentenced to thirty (30) years of imprisonment on Count 1, five (5) years of imprisonment on Count 2, five (5) years of imprisonment on Count 3, and thirty (30) years of imprisonment on Count 4, all to run consecutively, for a total sentence of seventy (70) years (doc. 1 at 2; doc. 14 at 6).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-6628 (Ex. A at 29, Ex. G). The First DCA affirmed the judgment per curiam without written opinion on July 23, 2009 (Ex. J). The court denied Petitioner's motion for rehearing on September 24, 2009, and issued the mandate on October 13, 2009 (Ex. L). Gray v. State, 18 So. 3d 532 (Fla. 1st DCA 2009) (Table). Petitioner did not seek further review.

On September 17, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-4610, alleging ineffective assistance of appellate counsel (Ex. Q). The First DCA denied the petition on the merits on October 30, 2009 (Ex. S). Gray v. State, 21 So. 3d 121 (Fla. 1st DCA 2009) (Mem).

On September 30, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising nine grounds for relief (Ex. M at 1–49). In an order rendered September 2, 2010, the state circuit court summarily denied seven grounds (Grounds One through Six and Nine) and ordered an evidentiary hearing on the remaining two grounds, Grounds Seven and Eight (*id.* at 237–41). An evidentiary hearing was held November 3, 2010, at which Petitioner was represented by counsel (*id.* at 310–69). On December 1, 2010, the circuit court denied Grounds Seven and Eight (*id.* at 303–06). Petitioner, through counsel, appealed the decision to the First DCA, Case No. 1D10-6527 (Ex. O). The First DCA affirmed the judgment per curiam without written opinion on July 29, 2011, with the mandate issuing August 16, 2011 (Ex. P). Gray v. State, 65 So. 3d 1057 (Fla. 1st DCA 2011) (Table).

Petitioner, through counsel, filed the instant federal habeas action on August 1, 2012 (doc. 1).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's

rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows

that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly

unfair manner. <u>Ford v. Georgia</u>, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.     PETITIONER'S CLAIMS

Ground One:  "Ineffective Assistance of Counsel."

Petitioner alleges that A.N.W., the victim/subject of Counts 1, 2, and 4, contacted his trial counsel, Attorney Scott Miller, by telephone prior to trial and recanted her allegations against Petitioner (doc. 1 at 4–9).  He alleges Attorney Miller attempted to follow up on the recantation by requesting that an investigator interview A.N.W. and by attempting to depose her, but his efforts were unsuccessful (*id.*).  Petitioner alleges the absence of follow-up left Attorney Miller as the primary witness to the recantation (*id.*).  He further alleges Miller admitted at the postconviction evidentiary hearing that the recantation could have affected the jury's verdict (*id.*).  Petitioner contends Miller was ineffective for failing to withdraw from the case and testify on Petitioner's behalf (*id.*).

Respondent concedes this issue was adjudicated in the state postconviction proceedings (doc. 14 at 21–22).  Respondent contends Petitioner failed to demonstrate the state court's adjudication was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Supreme Court precedent (*id.* at 22–23).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly

deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Eight in his Rule 3.850 motion (Ex. M at 43–45). In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (Ex. N at 304). The court adjudicated the claim as follows:

> **Ground VIII**—The next claim involves trial counsel's decision not to withdraw from the case after the victim allegedly recanted her accusations against the Defendant. The Defendant testified that trial counsel told him that the victim had contacted him and recanted her allegations. Mr. Miller testified that he spoke with the victim on the phone and that she said the allegations she had made against the Defendant were not true. Mr. Miller then asked the victim to give a formal statement recanting her allegations. The victim did not accept Mr. Miller's offer and she never gave a sworn statement recanting the allegations.
>
> When asked why he did not become a witness for the Defendant, Mr. Miller said that he did not believe that it was in his client's best interest. Mr. Miller testified that his decision to remain as counsel was made in consultation with the Defendant. Mr. Miller said one of the reasons he declined to become a witness was that he believed the statement from the victim may have been coached and that he would have had to acknowledge that to the jury.
>
> The Court finds that Mr. Miller's decision to remain as counsel was a strategic choice made only after he consulted with the Defendant. Since the decision was a reasonable one it cannot serve as the basis for a Rule 3.850 motion alleging ineffective assistance of counsel.[FN 3] This claim, accordingly, is denied.

> [FN 3: <u>Jones v. State</u>, 845 So. 2d 55 (Fla. 2003) (Reasonable strategic decisions made by trial counsel "should not be second guessed by reviewing court [sic].")]

(Ex. N at 305–06). Petitioner appealed the decision to the First DCA (Ex. O at 14–21), and the appellate court affirmed the lower court's decision without written opinion (Ex. P).

At the postconviction evidentiary hearing, Attorney Miller testified regarding this issue as follows:

> Q [by the State]. Tell me about that phone call.
>
> A. All right. I don't remember if she called me or if I returned her call, but she called and I assume it was her. She identified herself as—and I don't remember her name at this point—and said something to the effect that the allegations were not true. I don't remember her exact words.
>
> . . . .
>
> I set up with my investigator a time for her to come in and give a statement. And I discussed it with Ms. Murray [the prosecutor], I believe. And I think we contacted her guardian at the time, but I'm not sure. Ms. Murray may have actually contacted her guardian. But for whatever reason, she didn't follow through. She didn't come into our office and give a statement.
>
> Q. Okay. So there was never any statement or any further investigation of that other than the phone call at that time?
>
> A. Correct.
>
> Q. And at trial, did you have an opportunity to question the victim about that?
>
> A. Yes.
>
> . . . .
>
> Q. And did you choose not to become a witness yourself in this case?
>
> A. I did.
>
> Q. And what was the basis of that decision?
>
> A. I thought it was—I thought it would not be in Mr. Gray's best interest.
>
> . . . .
>
> Mr. Gray was of the position that she would not—either not testify, or she would come in and deny the allegations. There seemed to be some basis for that,

because apparently, she had done that over the phone. And if she was going to deny the allegations, it would not be necessary. On the other hand, if I became a witness, I would not only testify about what she said, but also, the circumstances behind it, which led me to believe that the statement may have been coached.

      Q. So based upon the totality of what you're aware of, the discussion with your client, and the possible circumstances, you made the decision not to become a witness?

      A. Correct.

      Q. And you made the decision to proceed to trial as Mr. Gray's counsel?

      A. Correct.

      Q. And you made the decision to actually question her at trial about that?

      A. Yes.

(Ex. N at 341–43). On cross-examination by Petitioner's postconviction counsel, Attorney Miller admitted he was the only person who could testify regarding A.N.W.'s recanting her allegations (*id.* at 354). He also testified that that evidence "absolutely" could have influenced the outcome of the case by creating reasonable doubt as to Petitioner's guilt (*id.*).

At the postconviction evidentiary hearing, Petitioner testified that Attorney Miller informed him that he had a conversation with A.N.W., and she wanted to recant her "statement" (Ex. N at 323–24). Petitioner testified Miller told him he asked A.N.W. to come to his office, but the prosecutor and A.N.W.'s guardian stopped her from coming and told him that A.N.W. was recanting her recantation (*id.* at 324). Petitioner testified that A.N.W. also told Petitioner's mother that nothing happened between her and Petitioner, and she wished to change her story (*id.*). Petitioner testified, "she called my mother and basically went from there to get in contact with my attorney" (*id.*).

The state court's factual determination that Attorney Miller made a strategic decision not to withdraw from representation and provide testimony to impeach A.N.W.'s testimony was not an unreasonable determination of the facts in light of the evidence presented at the postconviction evidentiary hearing. Both Miller and Petitioner testified they discussed A.N.W.'s telephone call.

Although Miller did not testify regarding the reason A.N.W. did not come to his office to give a statement, Petitioner recalled that Miller told him he asked A.N.W. to come to his office, but her guardian stopped her from coming and told him (Miller) that A.N.W. was recanting her recantation. Miller testified he decided not to withdraw from the case to be a witness at Petitioner's trial. Petitioner has not shown by clear and convincing evidence that the state court's factual finding, that Attorney Miller's decision not to withdraw and testify was strategic, was unreasonable in light of the evidence adduced at the evidentiary hearing. Therefore, this finding is entitled to deference.

The remaining issue is whether Attorney Miller's strategic decision was reasonable. Miller testified he thought it would not be in Petitioner's best interest for him to withdraw from representation and testify at trial. Miller testified Petitioner told him he thought A.N.W. would either not testify at trial, or testify that the allegations against Petitioner were false. Miller testified Petitioner's belief was supported by A.N.W.'s telephone call. If A.N.W. acted as Petitioner predicted, which could not have been known with certainty until trial, Miller's withdrawing from the case would have been unnecessary. Further, Miller knew that if A.N.W. testified, he could, and did, question her regarding whether she ever told anyone that her allegations were not true (*see* Ex. C at 150–52, 156). Although A.N.W. denied previously recanting her allegations (*id.* at 152, 156), there certainly was a possibility she would answer Miller's questions truthfully and admit she had previously told someone that her allegations were false. Additionally, the trial transcript demonstrates that Miller presented testimony from defense witnesses that A.N.W. commented "it really didn't happen" and she wished to retract her allegations (*id.* at 356, 358), and that she was still a virgin (*id.* at 356, 384). Therefore, Miller's testimony would have been cumulative. Further, there was a risk that Miller's testifying would damage the defense by revealing what Miller described as "the circumstances behind [the recantation]," which led him to believe that the recantation may have been coached. Finally, Attorney Miller's decision not to withdraw was made only after consultation with Petitioner.

In light of these factors, the state court concluded that Attorney Miller's strategic decision not to withdraw and testify was reasonable. Fairminded jurists could disagree as to the correctness of this conclusion; however, it is this potential for disagreement which precludes Petitioner from obtaining relief under § 2254(d). *See* <u>Harrington</u>, 131 S. Ct. 786 ("A state court's determination that

a claim lacks merit precludes habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1127 (11th Cir. 2012) (if, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of <u>Strickland</u> was not unreasonable and AEDPA precludes the grant of habeas relief) (citing <u>Harrington</u>, *supra*). Therefore, Petitioner failed to demonstrate he is entitled to relief on Ground One.

    B.    <u>Ground Two: "Summary Denial of Ineffective Assistance of Counsel Claim VI."</u>

Petitioner asserts the postconviction court summarily denied his claims of ineffective assistance of counsel regarding counsel's failure to file a motion to suppress Petitioner's statements during a recorded pre-arrest interview with an investigator with a state child protection agency and an investigator with the local sheriff's department (doc. 1 at 9). Petitioner states he contended in Ground Six of his postconviction motion that trial counsel should have sought suppression of his statements on the ground that they were involuntary due to his suffering from Post-Traumatic Stress Disorder ("PTSD") (*id.* at 9–10; doc. 20 at 12–15). He states the postconviction court summarily denied this claim on the ground that investigators were not required to give him <u>Miranda</u> warnings,[7] because the interview was not a custodial interrogation (*id.*). Petitioner agrees with this determination, but he contends the statements were nonetheless involuntary due to his PTSD (*id.*). He argues state law requires an evidentiary hearing when a claim is not conclusively refuted by the record (*id.*). Petitioner contends the court not have determined whether his statements were affected by his PTSD without expert testimony (*id.*). Therefore, the postconviction court erred under state law by not holding an evidentiary hearing on this claim (*id.*).

Respondent contends Petitioner abandoned his ineffective assistance of counsel claim on appeal of the state circuit court's denial of his Rule 3.850 motion, by arguing only that the lower court erred by failing to hold an evidentiary hearing (doc. 14 at 24). Respondent further argues that Petitioner's claim that the lower court erred by failing to conduct an evidentiary hearing does not provide a basis for federal habeas relief (*id.* at 24–25). Respondent also argues that even if this court

---

[7] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

reviewed the merits of the ineffective assistance of counsel claim, Petitioner is not entitled to relief, because the state court's finding that Petitioner was "lucid and mentally engaged" during the interview was supported by the record (*id.* at 25). Further, the state court's adjudication was not contrary to or an unreasonable application of Supreme Court precedent (*id.*).

Respondent's exhaustion argument has been rejected by the Eleventh Circuit. In <u>Henry v. Dep't of Corr.</u>, 197 F.3d 1361 (11th Cir. 1999), the petitioner raised two claims of ineffective assistance of trial counsel in his Rule 3.850 motion and on appeal alleged error based on the trial court's failure to hold an evidentiary hearing on those claims. 197 F.3d at 1363. In Henry's § 2254 habeas petition, he raised the same ineffective assistance of counsel allegations he raised in his initial Rule 3.850 motion, and the district court found those claims procedurally barred because he failed to exhaust his claims in state court. *Id.* The Eleventh Circuit determined that under Florida Rule of Criminal Procedure 3.850, a state court appeal requesting only the evidentiary hearing denied by the trial court sufficed to exhaust Henry's claims in state court for the purposes of § 2254. *Id.* at 1368. The Eleventh Circuit has followed <u>Henry</u>, albeit in an unpublished opinion. *See, e.g.*, <u>Galin v. Sec'y, Dep't of Corr.</u>, 479 F. App'x 938 (11th Cir. 2012). Based upon <u>Henry</u>, the undersigned concludes Petitioner exhausted his claim of ineffective assistance of counsel for purposes of § 2254.[8]

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

---

[8] Respondent is correct, however, that to the extent Petitioner is now challenging only alleged state law procedural violations during the state postconviction proceedings, they cannot form the basis for federal habeas relief, because they are not related "to the cause of the petitioner's detention." <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987); *see also* <u>Carroll v. Sec'y, Dep't of Corr.</u>, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief);Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1329 (11th Cir. 2006) (state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief); <u>In re Rutherford</u>, 437 F.3d 1125, 1127 (11th Cir. 2006) (finding insufficient for habeas relief the petitioner's claim that the state post-conviction court denied him due process by failing to provide mental health records of a person the petitioner alleged had actually committed the crime (citing <u>Quince v. Crosby</u>, 360 F.3d at 1259, 1261–62 (11th Cir. 2004)); <u>Quince</u>, 360 F.3d at 1262 (rejecting a habeas petition, which alleged that the state judge presiding over the petitioner's post-conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. M at 33–37). In the state circuit court's written decision denying the claim, the court correctly stated the Strickland standard as the applicable legal standard (Ex. N at 238). The court consolidated the claim with Grounds One through Five, and adjudicated the claims as follows:

> **Grounds I–VI**[FN 1]—The Defendant argues that his trial attorney erred in not filing a motion to suppress certain statements he made in connection with the allegations against him. Specifically, the Defendant claims that incriminating statements he made to law enforcement were unlawfully coerced and made in violation of his Miranda rights. At trial, the state played a recorded conversation the Defendant had with Deputy Ralph Garrett and Lisa Lydston. During the questioning, the Defendant did not explicitly admit to having sex with his daughter. He did, however, say that "I don't remember doing it" and that "I'm not saying I did it or I didn't do it. I'm just saying I don't remember it happening." His statement was played to the jury without objection. A written statement made by the Defendant was also introduced at trial in which he apologized to the victim, but again said that he could not recall doing anything specific.

> > [FN 1: For the sake of judicial economy, the Court has combined grounds I through VI since they each deal with the allegation that counsel erred in not filing a motion to suppress.]

> The Court finds that, had a motion to suppress the Defendant's videotaped and written statements been filed, such a motion would have been denied. Not every interaction between the police and a citizen requires Miranda warnings be issued. Rather, Miranda warnings are required only when an individual is undergoing custodial interrogation. For purposes of Miranda, "[a] person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest."[FN 2]

> > [FN 2: Ramirez v. State, 739 So. 2d 568 (Fla. 1999).]

> The Defendant, as he admits in his written motion, arrived at the police station with his mother. He was not driven to the station in a police car. Although the Defendant says he was ordered down to the police station, the record contradicts this claim. Prior to the interview, the officer made it clear to the Defendant that he was not under arrest and was free to leave.

> > You're here at the sheriff's office in Crestview, of course, and I don't want you to believe you're here to be arrested because that's not the case . . . no matter what you say today you're going home. . . . And

if at any time while we[']re talking you can get up and walk out. I'm not detaining you. You're not detained by no (sic) means."[FN 3]

When the officer asked [ ] the Defendant if he understood that he was at the station of his "own free will" the Defendant responded affirmatively. Based on the fact that a reasonable person would not have believed they were under arrest during questioning, the Court finds that <u>Miranda</u> warnings were not required. Since <u>Miranda</u> was not required and the statements [sic], a motion to suppress would not have been granted had one been filed. Absent any prejudice to the Defendant, his claim of ineffective assistance of counsel based on a failure to file a motion to suppress must fail.

[FN 3: Transcript, attached as Exhibit A.]

Similarly, the fact that the Defendant was being treated for PTSD does not render his confession involuntary. A review of the transcript shows the Defendant was lucid and mentally engaged during his interview with police. The fact that he had a mental condition, without more, does not render his statements to law enforcement inadmissible. This claim, accordingly, is denied without the need for an evidentiary hearing.

(Ex. N at 238–40). Petitioner appealed the decision to the First DCA (Ex. O at 22–26). He conceded that the lower court correctly concluded that <u>Miranda</u> did not apply to his statements during the interview (*id.* at 22). He argued the lower court's conclusion that the confession was involuntary despite Petitioner's PTSD was reversible error (*id.*). The First DCA affirmed the lower court's decision without written opinion (Ex. P).

It is settled that statements or confessions made during a time of mental incompetency or insanity are involuntary and, consequently, inadmissible. *See* <u>Townsend v. Sain</u>, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963); <u>Blackburn v. State</u>, 361 U.S. 199, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960). Voluntariness is premised on the totality of the circumstances, *see* <u>Sullivan v. State of Ala.</u>, 666 F.2d 478, 482 (11th Cir. 1982) (citing <u>Blackburn</u>, 361 U.S. at 206), and requires more than mere mental illness to render a confession involuntary. For example, in <u>Colorado v. Connelly</u>, 479 U.S. 157, 161–70, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986), the Supreme Court upheld the murder conviction of a defendant suffering from schizophrenia who confessed to a police officer after the "voice of God" instructed him either to confess to the murder or to commit suicide. The Court held

the confession voluntary because the compulsion to confess was not accompanied by "coercive police activity."  479 U.S. at 164–67; *see also* United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995); United States v. Palmer, 203 F.3d 55, 61–62 (1st Cir. 2000) ("In the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness.").  Thus, it is not sufficient for a defendant merely to show that he was mentally ill; rather, he must establish that his mental state had the actual effect of rendering his statements to law enforcement unknowing or involuntary.  Nor is it sufficient for a defendant to show that his mental state could have impaired him to the point that his statements cannot be considered a product of a free mind and rational intellect; instead, the record must establish that, due to a mental disorder, the defendant was in fact unable to comprehend and effectively waive his privilege against self-incrimination.

In the instant case, the record of Petitioner's interview with Investigator Garrett and Investigator Lydston shows that during the interview, Petitioner told the investigators he had been mentally, physically, and sexually abused as a child, and suffered stress from being in the military (Ex. C at 288–92, 307–08).  He told them he was seeing a counselor once a week in 2004, but only two or three sessions were "approved," and he could not financially afford the cost of additional sessions (*id.* at 288–297).  Petitioner told them he blacked out on one occasion when his daughter (the victim of Counts 1, 2, and 4) alleged he hit her in the stomach (*id.* at 296, 304).  Investigator Garrett testified that during the interview, Petitioner signed a release to enable Garrett to obtain his medical records, and those records revealed no evidence that Petitioner suffered from blackouts or received abuse counseling through the Veterans Administration (*id.* at 341).

In the postconviction proceedings, Petitioner submitted medical records from Gateview Medical Clinic dated June 15, 2006, that he suffered from depression, anxiety and PTSD at the time he gave his interview to investigators on July 10, 2006 (Ex. N at 101–02).  The records from Gateview show that Petitioner was prescribed Wellbutrin, an anti-depressant, but it is unclear whether it was prescribed at Petitioner's appointment on June 15, 2006, or on July 20, 2006, after his interview with investigators (*id.*).

The medical evidence submitted by Petitioner by no means suggests he was insane at the time of his interview on July 10, 2006.  Further, he did not allege, nor was there any evidence

suggesting, that law enforcement forced him to speak, mistreated him, or took advantage of his state of mind when questioning him. Additionally, the transcript of Petitioner's interview reflects he was coherent and responsive to questions posed by investigators. Therefore, the state court reasonably concluded Petitioner failed to show that his statements to investigators were involuntary.

Inasmuch as Petitioner concedes <u>Miranda</u> warnings were not required, and Petitioner failed to show defense counsel had a meritorious basis for challenging the admissibility of the statements on the ground that Petitioner's mental state rendered his statements involuntary, Petitioner failed to demonstrate the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>. Therefore, he is not entitled to federal habeas relief on Ground Two.

C.     <u>Ground Three:  "Wrongful Introduction of Hearsay Evidence."</u>

Petitioner asserts the trial court erred by admitting Investigator Garrett's testimony that he had spoken to "a lady named Joyce" in the archives department of the Veterans' Administration, and "There was [sic] no findings that any blackouts [sic] or any abuse counseling through the VA." (doc. 1 at 10–11). Petitioner contends Garrett's testimony was inadmissible hearsay and violated Petitioner's rights under the Confrontation Clause, because "Joyce's" statements to Investigator Garrett were testimonial, her identity was not ascertained, and there was no showing Petitioner had the ability to depose her prior to trial or that she was unavailable for trial (*id.* at 11). Petitioner asserts he raised this claim on direct appeal of his conviction (*id.*).

Respondent argues Petitioner failed to exhaust this claim, because he did not fairly present it as a federal claim on direct appeal (doc. 14 at 25–26). Notwithstanding the failure to exhaust, Respondent contends Petitioner's claim is without merit (*id.* at 26–28).

Petitioner's argument before the First DCA on direct appeal, based upon Fla. Stat. §§ 90.801 and 90.802,[9] was that Investigator Garrett's testimony regarding Petitioner's VA records was inadmissible hearsay (Ex. G at 33–34). He framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no reference

---

[9] Florida Statutes § 90.801 defines hearsay and hearsay exceptions (that is, statements that are not hearsay). Fla. Stat. § 90.801. Florida Statutes § 90.802 states hearsay evidence is inadmissible except as provided by statute. Fla. Stat. § 90.802.

to the United States Constitution or federal law, and he cited no federal cases. He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim. Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the admission of Investigator Garrett's testimony was not exhausted.

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law. *See* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. In Petitioner's reply, he does not allege cause for his failure to raise the federal issue on direct appeal (*see* doc. 20 at 16). And even if he alleged ineffective assistance of appellate counsel as cause, which can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). With regard to Ground Three, the procedural default occurred in Petitioner's direct appeal. In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App P. 9.141(d). The record demonstrates Petitioner presented claims of ineffective assistance of appellate counsel to the First DCA (*see* Ex. Q), but none of those claims concerned appellate counsel's failure to raise a federal claim regarding the trial court's admission of Investigator Garrett's alleged hearsay testimony (*see id.*). Petitioner thus failed to show cause for the procedural default of the claim of trial court error raised in Ground Three. Moreover, Petitioner has not shown he is entitled to federal review of Ground Three through the "fundamental miscarriage of justice" exception to the procedural bar.

Therefore, Ground Three is procedurally defaulted, and the merits of the claim will not be considered by this court.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 21st day of May 2013.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**